KINTNER et al. v. HOCH–FREQUENZ–MASCHINEN AKTIEN–GESELL-
SCHAFT FUR DRAHTLOSE TELEGRAPHIE et al.

(District Court, D. New Jersey. January 28, 1918.)

1. JUDGMENT ☞953—RES JUDICATA—INFRINGEMENT OF PATENT—IDENTITY OF
SUBJECT—STATEMENT OF COUNSEL.

In a suit for infringement of patent, a prior cause between plaintiffs and
a third person cannot be considered res judicata, on the mere statement of
plaintiffs' counsel that the apparatus involved was substantially the
same as that now in use by defendant, and defendant is entitled to its
day in court.

2. WAR ☞10(2)—EFFECT ON ACTIONS—EXTENSION OF TIME TO ANSWER.

In suit for infringement of patent, defendant company's motion for an
order extending its time to answer until after the cessation of hostil-
ities and the reopening of communication between the United States and
Germany *held* not to be denied on any ground that plaintiffs would suf-
fer irreparable injury, in that for any recovery forthcoming they were
entirely dependent on a fund in the hands of the United States govern-
ment, realized from the operation of defendant company's plant after its
taking over as a war measure by the government.

3. WAR ☞10(2)—ALIEN ENEMY AS DEFENDANT—ORDER EXTENDING TIME TO
ANSWER.

In suit for infringement of patent against a German company, operat-
ing a wireless telegraph station taken over by the government during the
war, defendant company, on motion of its counsel, is entitled to order
extending time to answer until after the cessation of hostilities and the
reopening of communication between the United States and Germany, and
it would be improper to force filing of answer or subsequent trial, when
the company is in no position for either.

In Equity. Suit by Samuel M. Kintner and Halsey M. Barrett, re-
ceivers of the National Electric Signaling Company, against the Hoch-
Frequenz-Maschinen Aktien-Gesellschaft fur Drahtlose Telegraphie,
impleaded with Emil E. Mayer. On motion for an order extending de-
fendants' time to answer until after the cessation of hostilities and the
reopening of communication between the United States and the Ger-
man Empire. Order directed, extending the time for defendants to
file their answer until three months after the close of the war, or until
the further order of the court.

Lindabury, Depue & Faulks, of Newark, N. J., for plaintiffs.

Robert H. McCarter of Newark, N. J., and Louis Marshall, of New
York City, for defendants.

DAVIS, District Judge. Plaintiffs in the above-stated cause are re-
ceivers of the National Electric Signaling Company. They charge that
the defendants infringed a patent, granted by the United States to the
said company, in the operation of the wireless telegraph station at
Tuckerton, N. J. The suit was instituted after Congress had declared
that a state of war existed between the United States and the imperial
government of Germany. Emil E. Mayer, made a party with the cor-
porate defendant, was formerly in charge for the defendant corpora-
tion of the wireless telegraph station at Tuckerton, and while confined

in the immigrant station at Gloucester City, N. J., was served with process in this cause. He denies, as a matter of fact, that he was agent for or in any way represented the defendant company at the time process was served upon him. Mayer is now confined in Ft. Oglethorpe, Ga.

Counsel for defendants allege that they represented the defendant corporation prior to the declaration of a state of war between this country and that nation, and that they believe they have a good defense to the case upon the merits, and that it is impossible for them to confer with their clients at this time in order to file a proper defense. There is no probability that they will be able to confer with their clients until the war shall have come to an end. They therefore ask that the time be extended until three months after the end of the war to file their answer.

[1] This motion is opposed by the plaintiffs on the ground that the patents involved in this cause were found valid in a suit in the United States District Court for the Southern District of New York (241 Fed. 956), between the plaintiffs and the Atlantic Communication Company, and that "the apparatus involved in that action was substantially the same as that which is now being used in the wireless station of the defendant company at Tuckerton, N. J., and that the various defenses enumerated in the affidavit of Theodore Lemke were interposed" in that action. Upon the statement of counsel this cause cannot be considered, in my opinion, res adjudicata, and the defendant is entitled to its day in court.

[2] Plaintiffs further oppose the motion on the ground that they will suffer irreparable injury, in that for any recovery that may be forthcoming in this cause the plaintiffs are entirely dependent upon a fund in the hands of the United States government, amounting to some $350,000, which according to the announcement of the government will be turned over to the winner of the above suit in the Chancery Court of New Jersey. It appears that a suit has been instituted in the Court of Chancery of New Jersey by a French company against the defendant corporation to determine the ownership of said wireless station; the French company claiming that the plant belongs to it, while the defendant company claims the same.

After war was declared between Great Britain, France et al., and Germany et al., the United States took over the operation of the said wireless station, and $350,000 has been collected and is now held by the United States for the rightful owner of the plant. If the French company wins, the plaintiffs claim the money will be delivered to that company, and that there is no other fund out of which to satisfy any judgment that may be secured against the defendants. If it should be determined that the defendant corporation is the rightful owner of the plant, and said $350,000, therefore, belongs to it, counsel have agreed that it shall not be turned over to the defendant, but may be retained by the United States to satisfy any judgment secured against the defendants in this cause. If it should finally be determined that the said French company owns the plant, then it would appear that the defend-

ant corporation is not liable in this action. It does not follow, therefore, that, if the defendants are granted relief, plaintiffs will suffer irreparable damage.

The right of an enemy, or ally of enemy, licensed to do business in this country, to prosecute and maintain any such suit or action so far as the same arises solely out of the business transacted within the United States, is recognized in "An act to define regulating and punishing trading with the enemy and for other purposes, approved October 6, 1917" (40 Stat. 411, c. 106 [Comp. St. 1918, §§ 3115½a–3115½j]). In the case of Harland & Wolff, Ltd., appellant, v. S. S. Kaiser Wilhelm II, appellee, 246 Fed. 786, 159 C. C. A. 88, L. R. A. 1918C, 795, recently decided by the Circuit Court of Appeals of this Circuit, the court said:

"If, as is no doubt the case, the counsel for the German claimant cannot at this time properly procure proofs and present his client's case, the court [District Court] can, and no doubt will, delay action until this can be done."

The court further said:

"This case is exceptional in its situation, and calls for the exercise of that range of discretion which the broad powers of a court of admiralty enable it to exercise. Such broad powers and range of discretion are, in our judgment, fittingly exercised by an order which will make due provision for, first, giving the German citizen and belligerent an opportunity to litigate his rights, if relations with his country are hereafter resumed; second, providing for adjudging, if the government hereafter so desires, its rights and liabilities, if any, in taking over libeled property of the German subject; third, adjudging hereafter what effect the taking of this ship by the government had on the claim of the British lienor and the further obligation of the German vessel owner as between themselves.

"In following this course, and protecting the unprotected rights of an absent German citizen while this country is at war with the imperial government of its country, we are impelled by three all-sufficient reasons: First, the innate sense of fairness, decency, and justice, which respects the rights of an enemy; second, the broad principles of international intercourse, which leads courts and nations that believe in international rights to be the more careful to observe them toward belligerents; and, lastly, because the awarding to this German citizen, with whom our country is at war, the careful preservation until times of peace of its rights, is in line with those high ideals of Anglo-Saxon justice which led the British courts years ago (In re Bousemaker, 13 Vesey, 71, decided in 1806) to allow the claim of an alien enemy to be proved in time of war and the dividends held by the British court until peace. Indeed, the fact that our country is now at war with Germany is all the more reason why this court should most scrupulously award to this German citizen those international and equitable rights which no fair-minded people ever deny, even to their enemies, in times of war."

[3] This opinion is dispositive of the question before me. It would manifestly be unjust to deny the relief sought by the defendants, and force them to file their answer, and subsequently to trial, when they are in no position to do either. If, at any time before peace is restored, communication may be had between citizens of this country and those of the imperial government of Germany, the plaintiffs may bring such fact to the attention of the court. Under the present conditions, however, the only course to pursue, as the court sees it, will be to make an order extending the time for defendants to file their answer until three months after the close of the war, or until the further order of this court.